**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

|  |  |
|---|---|
| THE ESTATE OF MARION EDMONDS, *et al.*,[1]<br><br>    Plaintiffs,<br><br>    v.<br><br>FIRST HORIZON BANK, *et al.*,<br><br>    Defendants. | Case No. 2:26-cv-203 |

**OPINION & ORDER**

Patrick Edmonds, as heir and administrator of the Estate of Marion Edmonds, brought this case in state court alleging breach of contract and seeking a preliminary injunction after Defendant First Horizon Bank denied loss mitigation and initiated foreclosure proceedings. ECF Nos. 1-1 (complaint). After removing to this Court based on diversity jurisdiction, ECF No. 1, First Horizon moved to dismiss the case for

---

[1] Pursuant to Va. Code § 8.01-6.3(A), the style of the case in a suit "to be prosecuted . . . by or in the name of a fiduciary . . . shall be substantially in the following form: '(Name of fiduciary), (type of fiduciary relationship), (Name of the subject of the fiduciary relationship).'" "Any pleading filed that does not conform to [such] requirements . . . but otherwise identifies the proper parties shall be amended on the motion of any party or by the court on its own motion," and "[s]uch amendment relates back to the date of the original pleading." Va. Code § 8.01-6.3(B); *see also Ray v. Ready*, 822 S.E.2d 181, 185 (Va. 2018) (explaining that Va. Code § 8.01-6.3(b) "creates a safe-harbor for errors" where a pleading identifies the proper parties but fails to conform to the naming convention set forth in Va. Code § 8.01-6.3(A)).

Here, as the proper parties are identified, the Court will, on its own motion, amend the styling of the case to conform to the requirements set forth in Va. Code § 8.01-6.3(A). Accordingly, it is **ORDERED** that the docket be changed to identify the plaintiff as "Patrick Edmonds, administrator of the Estate of Marion Edmonds."

failure to state a claim under Fed. R. Civ. P. 12(b)(6). ECF Nos. 7 (motion), 8 (memorandum). The plaintiff moved to remand but never filed an opposition to the motion to dismiss. ECF Nos. 12 (motion), 13 (memorandum).

For the reasons stated below, the motion to remand will be **DENIED**, and the motion to dismiss will be **GRANTED**.

## I.   BACKGROUND

At this stage, the Court assumes the facts alleged in the complaint are true.[2]

In January 2004, Marion Edmonds, now deceased, entered into a mortgage loan contract with First Horizon, evidenced by a note and secured by a deed of trust, for a property located at 3031 Westminster Avenue, Norfolk, VA 23504. ECF No. 1-1 ¶¶ 6–7, 9. The plaintiff, Marion Edmonds's son and heir, is the successor in interest on the mortgage loan, owner of the property at 3031 Westminster Avenue, and administrator of Marion Edmonds's estate. *Id.* ¶¶ 1–2, 6, 9, 14.

First Horizon denied the plaintiff's application for loss mitigation options on the mortgage loan because First Horizon requires that the loan must be assumed by the applicant to receive approval, but the mortgage loan is not assumable per the truth in lending disclosure statement. ECF No. 1-1 ¶¶ 10–12. The plaintiff notified First Horizon that its denial violates mortgage servicing guidelines, but First Horizon did not change its position and initiated foreclosure proceedings. *Id.* ¶¶ 16–17, 21. The Substitute Trustee failed to stop foreclosure on the property despite being

---

[2] For purposes of deciding the plaintiff's motion to remand, the Court relies upon the jurisdictional facts made in both the plaintiff's state court complaint, ECF No. 1-1, and in First Horizon's notice of removal, ECF No. 1, which do not appear to conflict.

informed of First Horizon's alleged violations of mortgage servicing guidelines. *Id.* ¶ 18. The Substitute Trustee scheduled auction of the property for February 4, 2026. *Id.* ¶ 22.

As a result, on January 26, 2026, the plaintiff filed suit in the Circuit Court for the City of Norfolk alleging breach of contract by First Horizon and the Substitute Trustee. ECF No. 1-1 ¶¶ 23–40. The plaintiff also brings a claim against the Substitute Trustee for lack of authority to foreclose. *Id.* ¶¶ 41–48. The plaintiff seeks compensatory damages of $74,000, reimbursement of all improper foreclosure fees charged to the plaintiff, and a preliminary injunction on foreclosure proceedings. *Id.* at 7–8.

On February 2, 2026, the Circuit Court for the City of Norfolk entered a temporary order enjoining First Horizon from selling the subject property, ECF No. 1-2, and the foreclosure sale was subsequently cancelled, ECF No. 1 ¶ 28.

## II.    LEGAL STANDARDS

### A.    Removal Based on Diversity of Citizenship

Title 28, United States Code, Section 1441(a) provides that "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court . . . embracing the place where such action is pending." The party seeking removal bears the burden of establishing jurisdiction. *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). "If at any time before final judgment it appears

that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Where subject matter jurisdiction is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332(a), the amount in controversy must exceed $75,000, and "diversity must be complete such that the state of citizenship of each plaintiff must be different from that of each defendant." *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (quotation marks and citation omitted).

## B.    Fraudulent Joinder

The fraudulent joinder doctrine "permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). "To show fraudulent joinder, the removing party must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts, or that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp. Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quotation marks and citation omitted). In determining whether the removing party has met this "heavy burden," *id.*, "all doubts about the propriety of removal should be resolved in favor of remanding the case to state court," *Skidmore v. Schinke*, 171 F.4th 319, 324 (4th Cir. 2026) (citation omitted).

The citizenship of a nominal party is also disregarded for purposes of determining diversity jurisdiction. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*,

4

736 F.3d 255, 257 (4th Cir. 2013). A nominal party is "a party having no immediately apparent stake in the litigation either prior or subsequent to the act of removal." *Id.* at 260. "The Fourth Circuit has not precisely defined the test for determining when a party is merely nominal, but courts in [the Eastern District of Virginia] have treated this inquiry as identical to that used for assessing fraudulent joinder." *Wingate v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-167, 2018 WL 3341186, at *4 (E.D. Va. July 6, 2018).

### C.     Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true," *Twombly*, 550 U.S. at 555, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III.   ANALYSIS

#### A.   Motion to Remand

Because "subject matter jurisdiction is a threshold issue" that "must [be] address[ed] before addressing the merits" of a claim, *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999), a court simultaneously faced with a motion to remand and a motion to dismiss must first assess the motion to remand and may only consider the motion to dismiss after determining it has subject matter jurisdiction over the claim. *See Burrell v. Bayer Corp.*, 918 F.3d 372, 379–80 (4th Cir. 2019). Accordingly, although the motion to remand was filed after the motion to dismiss in this case, the Court must address the motion to remand first. Removal is proper under 28 U.S.C. §§ 1332(a)(1) and 1441(b) if there is complete diversity of citizenship between the properly joined parties and the amount in controversy exceeds $75,000. Both requirements are met here.

#### i.   *Complete Diversity*

The plaintiff, as Administrator of the Estate of Marion Edmonds, is a citizen of the Commonwealth of Virginia. *See* 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same [s]tate as the decedent"); ECF No. 1 ¶ 16 (stating that Marion Edmonds was a citizen of the Commonwealth of Virginia at the time of her death). First Horizon is a citizen of Tennessee. *Id.* ¶ 18. First Horizon argues that there is complete diversity in this case

because the Substitute Trustee—a citizen of Virginia—has been fraudulently joined or is a nominal party. *Id.* ¶¶ 20–34; ECF No. 14 at 5–7. The Court agrees.

The Substitute Trustee is a fraudulently joined or nominal party because there is no reasonable possibility that the plaintiff can establish a cause of action against it. With respect to the breach of contract claim, the Substitute Trustee is not a party to the relevant contracts; indeed, the complaint acknowledges that "a [n]ote and the [d]eed of [t]rust . . . impose[] obligations on the [l]ender and the borrower" and only "confer contingent power to foreclose to the Trustee." ECF No. 1-1 ¶¶ 23–24; *see also Powell v. Adams*, 18 S.E. 2d 261, 262–63 (Va. 1942) ("The powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which [it] acts."). And here, the Substitute Trustee does not serve a role with respect to loss mitigation applications, nor does it determine when to foreclose on a property. In fact, the Substitute Trustee's only role is to manage the foreclosure process at the direction of the lender, if and when foreclosure proceedings are initiated by the lender. *See* ECF No. 8-1 ¶ 18 (outlining how the trustee shall manage the foreclosure process "if [l]ender invokes the power of sale"); *id.* ¶ 20 (providing that lender may remove the trustee and appoint a substitute trustee).

Had the Substitute Trustee breached a contractual or fiduciary duty in the process of *completing* the foreclosure, the plaintiff might be able to state a claim against it, as substitute trustees do owe a duty of impartiality to the parties to a deed of trust. *Rohrer v. Strickland*, 82 S.E. 711, 712 (Va. 1914) ("A trustee in a deed of

trust is the agent of both parties, and bound to act impartially between them.")
(quotation marks and citation omitted). But the complaint only vaguely alleges in
conclusory fashion that the Substitute Trustee violated its duty of impartiality by
failing to stop foreclosure after being placed on notice that First Horizon's denial of
loss mitigation options violated Virginia Code and servicing guidelines. *See* ECF No.
1-1 ¶ 47. Moreover, the foreclosure was cancelled. ECF No. 1 ¶ 28.

Numerous decisions from this district in factually analogous cases have held
that the substitute trustee was a nominal or fraudulent party whose citizenship did
not defeat diversity. *See Tayal v. The Bank of New York Mellon F/K/A The Bank of
New York, as Trustee*, No. 1:19-cv-509, 2019 WL 11252971, at *4–5 (E.D. Va. Dec. 2,
2019) (disregarding citizenship of trustee where complaint offered only "bare
allegations that [the] [p]laintiff's refusal to cancel the planned foreclose sale . . .
violated his duty to remain impartial" and there was no allegation that the
foreclosure sale was ever completed) (collecting cases); *Dail v. Bank of Am.*, No. 2:18-
cv-640, 2019 WL 921452, at *4 (E.D. Va. Feb. 21, 2019) (substitute trustee was
fraudulently joined because plaintiff did not allege that foreclosure sale had been
completed); *Wingate v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-167, 2018 WL
3341186, at *5 (E.D. Va. July 6, 2018) (substitute trustee was fraudulently joined
because plaintiff could not allege that foreclosure sale was completed). Although the

plaintiff argues that this case is different, ECF No. 13 at 2–4, the plaintiff fails to cite any authority to support that contention, and the Court has found none.

With respect to the claim for lack of authority to foreclose, "courts in similar cases have categorically rejected claims that a cause of action may be established under either 'lack of authority to foreclose' or 'wrongful foreclosure' theories." *Wingate*, 2018 WL 3341186, at *4; *see also, e.g., Hien Pham v. Bank of New York*, 856 F. Supp. 2d 804, 810–11 (E.D. Va. 2012) (noting that there was not a "glimmer of hope" for plaintiffs to establish a cause of action against a substitute trustee under a "show me the noteholder's authority" theory of liability and that "Virginia does not recognize a cause of action for wrongful foreclosure"). And again, the plaintiff fails to cite any authority to the contrary. *See* ECF No. 13 at 2–4.

Accordingly, because the plaintiff has no plausible cause of action against the Substitute Trustee in state court, the Substitute Trustee was improperly joined. Ignoring the citizenship of the Substitute Trustee for jurisdictional purposes, the parties are completely diverse.

### ii.   *Amount in Controversy*

In addition to seeking $74,000 in compensatory damages and reimbursement of improperly assessed fees, the plaintiff seeks to enjoin First Horizon and the Substitute Trustee from foreclosing on the subject property. "[R]equests for injunctive relief must be valued in determining whether the . . . amount in controversy" satisfies the jurisdictional threshold. *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010). Therefore, the Court must determine whether the injunctive relief sought is

valued at more than $1,000. *Id.* ("[P]laintiffs may aggregate smaller claims in order to reach the jurisdictional threshold.").

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). In the Fourth Circuit, the value of the object of the litigation is equal to "the pecuniary result to either party which [a] judgment would produce." *Dixon v. Edwards*, 290 F.3d 699, 710–11 (4th Cir.2002) (citation omitted) (finding the amount in controversy satisfied because the plaintiff sought a declaration invalidating an employment contract worth more than $75,000); *see also JTH Tax,* 624 F.3d at 639 ("We ascertain the value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant.").

In cases involving claims for an injunction implicating real property, numerous courts in this district have found that the value of the real property determines the amount in controversy, because the object of the litigation, insofar as the injunction is concerned, is ownership of the property. *See, e.g., Creech v. Everbank*, 467 F. Supp. 3d 425, 431 (E.D. Va. 2020) (value of claim for injunction preventing foreclosure based on uncontested evidence that the value of the home was $105,970); *Rehbein v. CitiMortgage, Inc.*, 937 F. Supp. 2d 753, 758–59 (E.D. Va. 2013) (where plaintiff sought preliminary injunction to enjoin foreclosure sale, amount in controversy determined to be value of the real property or, at minimum, the outstanding balance of the loan as of the date of removal); *Sherman v. Litton Loan Servicing, L.P.,* 796 F.

10

Supp. 2d 753, 766 (E.D. Va. 2011) (where plaintiff sought preliminary injunction to prevent foreclosure sale, amount in controversy met due to "manifest fact" that the value of the property exceeded $75,000); *Harrell v. Caliber Home Loans, Inc.*, 995 F. Supp. 2d 548, 550–51 (E.D. Va. 2014) (amount in controversy in action for declaratory and injunctive relief to void foreclosure was measured by value of the property). Although the plaintiff argues that because they are not suing to void the deed of trust or promissory note, the amount in controversy is not equal to the value of the home or the loan balance, the plaintiff—yet again—provides no authority in support of this contention. ECF No. 13 at 5–6.

In contrast, First Horizon submitted evidence—the accuracy and authenticity of which is not challenged by the plaintiff[3]—that the subject property is valued at approximately $209,400. ECF No. 1-5 (property report). But even if the Court were to use the uncontested amount of the loan balance (approximately $69,000) to measure the value of the claim for injunctive relief, that amount, when added to the $74,000 in damages sought by the plaintiff and the additional costs, easily exceeds

---

[3] The Court notes that the plaintiff did not reply to First Horizon's opposition to the motion to remand, nor did the plaintiff respond to First Horizon's motion to dismiss, and the time within which to do so has passed. *See* ECF No. 15 at 1 (First Horizon's notice of non-opposition to the motion to dismiss).

$75,000. Therefore, the amount in controversy requirement is met, and this Court may exercise jurisdiction over the case.

B.    **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

First Horizon argues that this case should be dismissed for failure to state a claim because, although the complaint alleges breach of contract by First Horizon, it "fails to allege facts showing or allowing for the inference that First Horizon owed [the plaintiff] any contractual duty to review or approve his request for a loan modification." ECF No. 8 at 2. That is correct.

As First Horizon points out, the plaintiff does not cite any language from the promissory note or deed of trust that establishes a legal duty owed to the plaintiff, instead only vaguely contending that "Virginia law" and "federal regulations governing the foreclosure process" are part of the contract and that First Horizon violated them. ECF No. 1-1 ¶¶ 24–26, 36. But "[t]o allege that the defendant failed to perform obligations imposed by the contract, a plaintiff cannot rely upon conclusory statements but must identify which provisions imposed the purportedly breached obligation." *Compel v. Citi Mortg. Inc.*, No. 1:04-cv-1377, 2005 WL 4904816, at *2 (E.D. Va. Feb. 23, 2005); *see also ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 215 (4th Cir. 2019) (complaint "not pled with enough specificity to plausibly state a claim for breach" of contract where "allegations d[id] not specify what contractual obligation was breached" and were instead wholly

12

conclusory). Because the complaint does not provide that information,[4] it will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the plaintiff's motion to remand (ECF No. 12) is **DENIED**, and Defendant First Horizon's motion to dismiss (ECF No. 7) is **GRANTED**.

---

[4] Were the Court to take judicial notice of the promissory note and the deed of trust, as the plaintiff's breach of contract claims turn on the contents of these documents, *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016), that would not aid the plaintiff. Nothing in the deed obligates First Horizon to approve a loss mitigation application prior to instituting foreclosure proceedings. *See* ECF No. 8-1 ¶ 18. And "[w]ithout a contractual obligation for a servicer to offer a homeowner a loan modification [one type of loss mitigation], . . . an individual cannot file suit against a lender for failure to enter into, to review, or to process a loan modification agreement—neither via breach of contract nor via breach of duty of good faith and fair dealing." *Davis v. Specialized Loan Servicing LLC*, No. 3:17-cv-787, 2018 WL 3352647, at *7 (E.D. Va. July 9, 2018) (alterations accepted).

Additionally, the deed states that it will be governed by federal and Virginia law, ECF No. 8-1 ¶ 14, but no federal or Virginia law imposes a duty to approve loss mitigation. Although 12 C.F.R. § 1024.41 (speculating, as First Horizon does, that this *might* be the federal law the plaintiff is alluding to) requires loan servicers to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application, and to evaluate the borrower for loss mitigation options upon receipt of a completed application, the loan servicer is not *required* to offer or approve any loss mitigation options. Instead, 12 C.F.R. § 1024.41 expressly contemplates denials of such applications, only mandating that foreclosure referral not be pursued until the borrower has received notice of the denial and has either chosen not to appeal, or the appeal has been denied. Here, the allegations set forth in the complaint do not indicate that First Horizon failed to comply with such requirements—and in fact suggest that it did. *See* ECF No. 1-1 ¶¶ 11, 17. There is also "no freestanding common law duty in Virginia to grant a loan modification." *Willner v. Dimon*, 849 F.3d 93, 113 (4th Cir. 2017).

The complaint is hereby **DISMISSED.** The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED**.

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
June 1, 2026

14